O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COLONIAL LIFE AND ACCIDENT INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> STENTORIANS-L.A. COUNTY BLACK FIRE; et al.; <br><br> Defendants. | Case No. CV 13-9235 CAS (ASx) <br><br> **ORDER GRANTING TEMPORARY RESTRAINING ORDER AND TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

**I. INTRODUCTION**

Plaintiff Colonial Life and Accident Insurance Company filed this action on December 16, 2013, against defendants Stentorians - L.A. County Black Firefighters ("Stentorians"), Humana, Inc. ("Humana"), Swett & Crawford ("Swett"), and Transamerica Life Insurance Company ("Transamerica"). Dkt. #1. Plaintiff asserts claims for breach of contract, intentional interference with contractual relations, intentional interference with prospective economic advantage, fraud, conversion, conspiracy, invasion of privacy, specific performance, violation of Cal. Bus. & Prof.

Code § 17200, et seq., and injunctive relief.  Id.  Plaintiff filed an application for a temporary restraining order on that same date.  Dkt. #3.

## II. BACKGROUND

Plaintiff alleges that it is a South Carolina corporation with its principal place of business in South Carolina.  Compl. ¶ 3.  Plaintiff further alleges that Stentorians and Swett are California corporations, Humana is a Delaware corporation, and Transamerica is an Iowa corporation.  Id. ¶¶ 4-7.  Because plaintiff contends that Stentorians is wrongfully withholding approximately $2,500,000 in insurance premiums that belong to plaintiff, this Court has jurisdiction over this action based on diversity of citizenship under 28 U.S.C. § 1332.

Plaintiff alleges that it provides insurance policies to approximately 15,000 employees of Los Angeles County (the "County") and their families, and that premiums for these policies are deducted from the payroll of these employees by the County, and remitted to plaintiff as a vendor.  Id. ¶¶ 9-10.  Plaintiff asserts that it entered into a contract with Stentorians on or about May 27, 2011, in which Stentorians agreed to perform the administrative service of collecting insurance premiums for plaintiff through the payroll deduction slot granted to Stentorians by the County, in exchange for an administrative fee.  Id. ¶ 11 (citing the alleged contract, attached to the Complaint as Exhibit A); Summerford Decl. ¶¶ 4-5, Ex. A.

The contract provides that Stentorians will collect insurance premiums deducted from employee paychecks and remit the premiums to plaintiff on a monthly basis, along with an accounting of premiums collected.  Summerford Decl. Ex. A at 1.  In the contract, Stentorians agreed to refrain from negotiating, soliciting or selling insurance, or "in any other manner act[ing] as an insurance producer in connection with the sale of Colonial Life insurance products."  Id.  The contract further provides that it may be terminated by either plaintiff or Stentorians at any time upon 30 days' written notice.  Summerford Decl. ¶ 8; Ex. A at 1-2.  Plaintiff asserts that, to date, it has not received any notice of termination of the contract from Stentorians.  Compl. ¶ 21.

Additionally, Stentorians agreed in the "procedures" governing the contract (the "Stentorians Procedures") to notify plaintiff of any written or oral communication with the County. Id. ¶ 18; Summerford Decl. ¶ 11, Ex. B ¶ 5. Plaintiff contends that the Stentorians Procedures are incorporated into the contract. Summerford Decl. ¶ 10.

Plaintiff alleges that, in or about March 2012, Stentorians informed plaintiff that its third party administrator, MB Ellison, requested that plaintiff provide its policyholder and premium data to facilitate the employee payroll deductions. Summerford Decl. ¶ 12. Plaintiff asserts that it agreed to provide the data on or about March 22, 2012, subject to customer privacy regulations and a "privacy provision" that would be appended to the Stentorians' Procedures, which would require Stentorians to abide by all privacy, confidentiality, and information security policies established by plaintiff. Summerford Decl. ¶ 13, Exs. C and D. The privacy provision of the Stentorians' Procedures requires Stentorians to notify plaintiff of any security incident involving the unauthorized access, use, or disclosure of policyholder information. Summerford Decl. Ex. D.

Plaintiff provides evidence that, on or about December 5, 2013, approximately 15,000 of plaintiff's individual policyholders received letters with the logos of "Los Angeles County, Deduction Agency: SFA," Humana, and Swett, in which these entities stated to plaintiff's policyholders that their accident, disability, critical illness, and supplemental health plans with plaintiff would now be covered by Humana. Compl. ¶ 24; Summerford Decl. ¶¶ 17-18, Ex. E. Plaintiff contends that it did not authorize the transactions described in the December 5, 2013 letter, and that the transactions were made without plaintiff's knowledge, or the knowledge of plaintiff's individual policyholders. Id. ¶ 18.

Additionally, plaintiff contends that Stentorians is wrongfully withholding approximately $2,500,000 in premiums that were deducted from plaintiff's policyholders' payroll on or about November 30, 2013, and December 13, 2013. Id. ¶ 22. According to plaintiff, these entities intentionally misrepresented to plaintiff's policyholders that there is "nothing they need to do to continue their coverage and no

action is required on their part," Summerford Decl. ¶ 17, Ex. E, even though the withholding of these policyholders' premiums from plaintiff creates the "imminent danger" that these policyholders' policies will lapse, id. ¶ 22.

On or about December 13, 2013, plaintiff demanded that Stentorians, Humana, and Swett cease using the private information of plaintiff's policyholders and return it to plaintiff, along with the premiums covering the individual policyholders. Compl. ¶ 31; Summerford Decl. ¶ 23, Ex. F. Plaintiff alleges that these defendants have not taken corrective action to date. Compl. ¶ 32. According to plaintiff, this conduct constitutes a breach of contract by Stentorians. Summerford Decl. ¶ 25.

### III. LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co., 240 F.3d 832, 839 & fn.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 9 (2008). The Ninth Circuit summarized the Supreme Court's recent clarification of the standard for granting preliminary injunctions in Winter as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal. Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009) ("Cal. Pharms. I"). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011); see also Indep. Living Ctr. of So. Cal. v. Maxwell-Jolly, 572 F. 3d 644, 657–58 (9th Cir. 2009) ("ILC II"). A "serious question" is one on which the movant "has a fair

chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiff argues that it is likely to succeed on the merits of its breach of contract claim. App. TRO at 8-9. In this regard, plaintiff argues that Stentorians' alleged misdirection of premiums intended for insurance policies provided by plaintiff, as well as Stentorians' alleged improper disclosure of plaintiff's policyholders' private information to Humana and Swett, is in clear violation of the terms of the contract between plaintiff and Stentorians. Id. at 9. The Court agrees. The contract states that "Stentorians shall collect Colonial Life Insurance premiums deducted from employee paychecks by the County and shall remit same to Colonial Life on a monthly basis." Summerford Decl. Ex. A. Additionally, the "Addendum to Procedures Document" states that "Stentorians shall abide by all privacy, confidentiality, information security and other policies established by Colonial Life," and that Stentorians shall maintain "reasonable controls . . . to ensure the confidentiality of personal information and to ensure it is not used for purposes other than performing services under Stentorians' agreement with Colonial Life." Id. Ex. D. Stentorians' apparent diversion of plaintiff's policyholders' premiums to other defendants, and Stentorians' disclosure of plaintiffs' policyholders' private data, see id. ¶¶ 17-18, 22, is therefore likely to constitute a breach of the contract.

### B. Risk of Irreparable Injury

Plaintiff argues that irreparable harm is likely to occur in the absence of a temporary restraining order because approximately 15,000 of plaintiff's policyholders' premium payments are not being applied to the insurance policies provided by plaintiff, but rather are being held by defendants. App. TRO at 9-10; Summerford Decl. ¶ 26. As a result, according to plaintiff, these policyholders will lose their insurance with

plaintiff. Id. Additionally, plaintiff's policyholders' confidential information will be used for purposes outside of the scope of the contract between plaintiff and Stentorians. Id. The Court finds this argument persuasive, because "the threatened termination of benefits such as medical coverage for workers and their families obviously raise[s] the spectre of irreparable injury." Whelan v. Colgan, 602 F.2d 1060, 1062 (2d Cir. 1979). Similarly, the disclosure of plaintiffs' policyholder's private data to defendants is a separate basis for finding a risk of irreparable injury. See, e.g., Clear Lake Riviera Community Ass'n v. Cramer, 182 Cal. App. 4th 459, 471-72 (2010) (finding that a loss of privacy can constitute irreparable injury).

### C. Balance of Hardships and Public Interest

The Court also finds that the balance of hardships and the public interest favor the issuance of a temporary restraining order. The preliminary relief ordered here will maintain the status quo until a more extensive factual record can be developed and the Court can hear argument from defendants on the issues raised by plaintiff. See, e.g., In re Countrywide Financial Corp. Derivative Litig., 542 F. Supp. 2d 1160, 1174 (C.D. Cal. 2008) ("Preliminary equitable remedies are properly utilized to maintain the status quo . . . ."). Moreover, the public interest mandates that the rights of insurance policyholders be carefully safeguarded. Cf. Foley v. Interactive Data Corp., 47 Cal.3d 654, 684-85 (1988) (noting that insurers are "a supplier of a public service").

## V. CONCLUSION

In accordance with the foregoing, the Court hereby finds that a temporary restraining order should be issued in this matter.

Accordingly, IT IS HEREBY ORDERED that Stentorians, Swett, Humana, Transamerica, as well as their officers, agents, servants, employees, attorneys, and those in active concert or participation with them, are restrained, pending further order of Court, from:

     1. Misdirecting the premiums of any of plaintiff's individual policyholders to Humana and/or other entities other than plaintiff, or allowing or causing the individual policies provided by plaintiff to policyholders to lapse;

     2. Using the private information of plaintiff's individual policyholders for the financial gain of Stentorians, Humana, Swett, and/or Transamerica;

     3. Interfering with the contractual relationships between plaintiff and its individual policyholders; and

     4. Enrolling any employee of the County holding a Colonial Life & Accident Policy with any other insurer.

Defendants are further ORDERED TO SHOW CAUSE on **January 2, 2014, at 10:30 A.M.** in Courtroom 5 of this Court, located at 312 North Spring Street, Los Angeles, CA 90012, why a preliminary injunction should not issue enjoining defendants from:

     1. Misdirecting the premiums of approximately 15,000 of plaintiff's individual policyholders to Humana and/or other entities other than plaintiff and causing the individual policies provided by plaintiff to lapse;

     2. Using the private information of plaintiff's individual policyholders for the financial gain of Stentorians, Humana, Swett, and/or Transamerica;

     3. Interfering with the contractual relationships between plaintiff and its individual policyholders; and

     4. Enrolling any employee of the County holding a Colonial Life & Accident Policy with any other insurer until further order of Court.

Defendants are further ORDERED TO SHOW CAUSE on **January 2, 2014, at 10:30 A.M.** in Courtroom 5 of this Court, located at 312 North Spring Street, Los Angeles, CA 90012 why defendants should not be ordered to (1) promptly return the private information of plaintiff's individual policyholders that was obtained and used for the financial gain of Stentorians, Humana, Transamerica, and Swett without the consent of the policyholders; (2) provide

spreadsheets listing all individual policyholders contacted by defendants; (3) cease all contact with plaintiff's individual policyholders forthwith, except as expressly agreed to by plaintiff on the one hand and Humana and Transamerica on the other hand; (4) account for any premiums paid to Humana and/or Transamerica on behalf of the individual policyholders, and if they have, to return any such premiums to plaintiff; (5) facilitate and ensure that corrective action is taken regarding the website listed in the December 5, 2013 letter, including the posting of a jointly drafted letter approved by plaintiff conspicuously on the website that addresses the alleged misrepresentations made and the complete removal of all information that refers or relates to insurance coverage shifting from plaintiff to Humana, Transamerica, and/or any other entity other than plaintiff; (6) facilitate and ensure that corrective action is taken regarding the phone number listed in the December 5, 2013 letter, including that the script for all calls related to this issue should be the content of the jointly drafted letter approved by plaintiff; and (7) assist plaintiff in the transition to a new vendor.

Defendants' response, if any, shall be due on or before **December 24, 2013**. Plaintiff's reply, if any, shall be due on or before **December 27, 2013**.

Dated: December 19, 2013

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE